McKinney, J\,
delivered the opinion of the court.
This .was an action of covenant brought by the defendants in error against the plaintiff in error, in the circuit court of Davidson, on the 29fch of December, 1852. The action is founded on the following instrument.
“Nashville, Oct. 6th, 1851. We the undersigned, promise to deliver to L. 0. Coleman, from one hundred . to one hundred and fifty head of cattle to be first rate fat beef, said Coleman paying' six dollars per cwt., and the rise of the market, if any. Said cattle to be delivered from the 1st of February next to the last of July, in lots of twenty or more monthly. Also, all the hogs that is fed with the cattle,- at the market price. Witness our hands and seals.
W. B. Hudson, [l. s.]
J. B. Hudson, [l. s.]
L. C. Coleman, [l. s.]”
The second count of the declaration, which alone need be noticed, substantially avers a tender to the defendant at Nashville of the two first lots of cattle, according to the terms of said covenant. And further avers, that the defendants(?jalways had been, and still were ready and willing to perform their part of said covenant. But the defendant refused to receive either of said lots of cattle, &c.
The plea simply traverses the averments of the declaration upon which an issue was made to the country.
The proof shows, that before the tender of the first lot of cattle, which was made between the 1st and 10th of February, 1852, the price of beef had fallen in the *465 Nashville market to four or four and a half cents per pound: And for this reason alone, Coleman refused to receive the cattle. It does not appear that the plaintiffs offered to deliver all, or any of the remaining lots of cattle.
The circuit judge instructed the jury in substance: that the plaintiffs were entitled to recover, in this action, damages for the refusal to receive the lots of cattle tendered, although no offer was made to deliver the remaining lots: and stated the rule of damages to be, the difference between the market value in Nashville at the time of the offer to deliver and the price stipulated in the contract. The court refused to charge, as requested by the defendant’s counsel, that the contract was entire, and that the offer to deliver part, would not entitle the plaintiffs to maintain this action without showing a tender of all the cattle, which, by the contract, they had agreed to deliver, and likewise a tender of the hogs.
The jury found for the plaintiffs five hundred dollars damages; a new trial was refused; and the case is brought to this court by an appeal in error.
If it be true as argued ■ for the plaintiff in error, that the contract declared on, is an entire contract, it is clear that the present action must fail. But we do not so consider it. The distinction between an entire and severable contract is clearly stated in the books. In the former, the consideration is entire on both sides. It does not either by its terms, or the implied intention of the parties, contemplate or admit of apportionment upon a partial failure on either side; and the complete fulfilment of the contract by either, is rcquir-' *466 ed as a condition precedent to the fulfilment of any part of the contract by the other. A severable contract is a contract, the consideration of which, by its terms, is susceptible of division and apportionment. There is, in such contract, no entirety of consideration on either side, constituting a condition of the agreement; and neither party - can claim more than an equivalent for the actual consideration on his part. Story on Con., . $ 21, 22.- 1 Bouv. Inst., 270, 271.
An entire contract in its legal interpretation, is an unconditional agreement for the whole of the several articles, or number, or quantity of goods contracted for; and precludes by its terms, and equally by the plain intention of the parties, all idea of divisibility: a sever-able contract on the other hand, in its terms, implies an apportionment.
There is another class of cases, noticed in some of the books, of a mixed nature, partaking of the character both of entire and ,of severable contracts, and which may be considered as entire or severable, according to the circumstances of the particular cases. Story on Con., § 24.
Erom these general principles, we think it clear, that the present action may well be maintained.
It is true, that as the contract is for the whole of an indefinite number of cattle, it may in some sense be regarded as entire; but it is very clear, that in its nature, 'and in its express as well as implied stipulations, it is several.
The contract is executory. By its terms, the cattle are to be delivered in separate parcels, and at different times, within the period of six months, “in lots *467 of twenty or more monthly.” By this stipulation the entirety of the contract is destroyed. And not only is the contract several, in respect to the time and manner of the delivery of the cattle, but it is so, likewise, in respect to the time of payment, in legal effect. The contract being executory, and containing no stipxdation as to the time of payment, the delivery and payment were concurrent acts, and the value of each lot, according to the contract price, was, in law, due and payable upon delivery. "We hold, therefore, that the contract is divisible into several contracts, as respects the remedy for the breach of each of which a separate action will lie.
The rule of damages laid down in the charge is correct. As respects the hogs, no specific time was fixed for their delivery, nor were they to be delivered in separate lots. The failure to tender them therefore, with the lots of cattle offered to be delivered, constitutes no ground of objection to the recovery.
There is no error in the record, and the judgment-will be affirmed.