BRADFORD & CARSON *v.* MONTGOMERY FURNITURE COM-
PANY.

(*Nashville.* December Term, 1905).

1. **CONTRACTS.** Of sale of good will and to remain out of busi-
ness creates an assignable right which is not annulled or for-
feited by an assignment thereof, when.

A contract for the sale of the good will of a business and the
agreement to remain out of that business in the city of its lo-
cation for three years, based upon a stipulated and valuable
consideration, creates property rights, valuable and assignable,
and such contract is not annulled or forfeited by an assignment
thereof by the purchasers to a corporation organized by them,
and a sale and transfer of their business to such corporation,
in which they become large stockholders, and the chief officers,
nor by their repurchase of the corporation business and their
resumption thereof as a partnership. (*Post, pp.* 615-626.)

Cases cited and approved: Kramer v. Old, 119 N. C., 1; Dun-
lop v. Gregory, 10 N. Y., 241; Beard v. Sinex, 6 Ind., 200; Pem-
berton v. Vaughn, 10 Adol. & El., 87, 59 Eng. Com. Law, 87;
Hitchcock v. Koker, 6 Adol. & El., 98, 33 Eng. Com. Law, 438;
Francisco v. Smith, 143 N. Y., 488; Match Co. v. Roeber, 106
N. Y., 473; Ice Co. v. Denler, 114 Mich., 297; Jacoby v. Whit-
more, 49 Law T. (N. S.), 335.

Case cited and disapproved: Bagby & Rivers Co. v. Rivers, 87
Md., 400.

2. **SAME.** Same. Sale of good will and agreement to remain out
of the business for three years for a sum to be paid in one year
is a severable contract, and not dependent upon performance
as a condition precedent, when.

A contract of the sale of the good will of business and an agree-
ment to remain out of that business for three years in the

Bradford v. Furniture Co.

city of its location for a stipulated sum to be paid in one year is not an entire, but a severable contract, and the performance thereof by the sellers is not a condition precedent to the payment of the stipulated consideration, and the breach thereof by the sellers in resuming business before the expiration of the three years will not defeat the collection of the consideration or purchase price, especially where the good will was delivered and enjoyed for a considerable period before the violation of the contract by re-engagement in the business. (*Post, pp.* 626-631.)

Cases cited and approved:    Coleman v. Hudson, 2 Sneed, 465; Jackson v. Byrnes, 103 Tenn., 700; Howard v. Taylor, 90 Ala., 243.

3.    **SAME.**    Of sale of good will and the agreement to remain out of business are valid and enforceable, when.

An agreement to remain out of a certain business in the city of its location for three years, based upon a stipulated and valuable consideration, in connection with a sale of the good will of that business, is reasonable and only affords a fair protection to the good will sold, does not interfere with the general interests of the public, and is not in restraint of trade, but is valid and enforceable. (*Post, p.* 632.)

Cases cited and approved: Jackson v. Byrnes, 103 Tenn., 699; Muse v. Swayne, 70 Tenn., 251; Electric Co. v. Hanks, 171 Mich., 70; Mell v. Mooney, 30 Ga., 413; Lufborough v. Henderson, 30 Ga., 482; Herbert v. Ford, 29 Me., 546; Warfield v. Boone, 33 Md., 63.

4.    **SAME.**    Cross bill to recover damages for breach of agreement to remain out of business, and measure of damages.

Where the note given for the good will of a business and for the agreement of the payees to remain out of that business for three years in the city of its location for a stipulated sum to be paid in one year is sued on, after the payees have breached their contract by re-entering into business contrary to its provisions, the defendants are entitled to maintain their cross bill

to recover such damages as they sustained by such breach of the contract, which are the natural and proximate results of such breach, to be set off against the decree upon the note, in whole or in part, and if'the same exceeds such decree, to have a judgment for the excess; and if no such resulting natural and proximate damages can be shown, and, if the contract, as in 'this case, does not contain any criterion by which the damages' may be ascertained, only nominal damages can be recovered, because uncertain, remote, and speculative damages are not recoverable. (*Post, pp.* 631-638.)

Cases cited and approved: Jackson v. Byrnes, 103 Tenn., 699; Howard v. Taylor, 90 Ala., 242; Taylor v. Howard, 110 Ala., 470; Terry v. Eslava, 1 Port., 273; Burkhardt v. Burkhardt, 47 Ohio St., 474; Mitchell v. Read, 84 N. Y., 556; Mellesch v. Keen, 28 Beav., 453; Rawson v. Pratt, 91 Ind., 9.

5. **INJUNCTION.** Most efficient remedy against violation of contract to remain out of a certain business.

The most efficient remedy against the violation of an agreement to remain out of a certain business and not to resume the same is an injunction inhibiting the defendant from continuing the business so resumed; and the jurisdiction of chancery to grant this relief is well established. (*Post, p.* 632.)

Case cited and approved: Jackson v. Byrnes, 103 Tenn., 699.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

STOKES & STOKES, for Bradford & Carson.

CHAMBERS & AUST and M. B. & BOYTE HOWELL, for the Furniture Company.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

Complaintants J. H. Bradford and J. T. Carson, partners under the firm name and style of Bradford & Carson, bring this bill against R. J., B. W. and W. W. Montgomery, partners under the firm name and style of Montgomery Furniture Co., to recover upon a note made to complainants by the defendants on February 2, 1902, for $3,000.

The defense made by answer and cross bill, is that the complainants have breached a contract and agreement made with the defendants in part consideration of the note sued on, and have thus destroyed the consideration of the note and injured and damaged defendants in the sum of $10,000, for which they ask a decree.

The material facts found by the court of chancery appeals are these :

Complainants, who for some years have been engaged in the wholesale and retail furniture business in the city of Nashville, on February 2, 1902, sold their entire business consisting of furniture, fixtures and the good will of the firm to defendants, agreeing at the same time to remain out of the furniture business in Nashville for three yeras, from and after that time.  The contract price of the merchandise and fixtures was $28,537.01, and was paid at the time of the sale.   The value of the good will of Bradford & Carson, and their contract not to again resume business in Nashville within three years was agreed to be $3,000, and for this the note sued upon was

made. Complaints delivered their stock, fixtures, and business to the defendants, ceased the furniture business, and complainant Bradford entered and remained in the employ of the defendants, assisting them in conducting their business, for some four months.

That on July 1, 1902, the Montgomery Furniture Company sold their entire business to the Montgomery Furniture & Manufacturing Company, a corporation which the defendants were instrumental in creating and organizing for the purpose of manufacturing furniture and dealing in it at wholesale and retail, in the city of Nashville. The defendants were the owners of $30,000 of the capital stock of the corporation which was $72,000, were its chief officers and had the management of its business. The corporation continued the furniture business in all respects as it had been conducted by the defendants, until January 1, 1904, when it resold this part of its business to the defendants who have carried it on from that time in all things as they did prior to their sale to the corporation.

That on January 1, 1903, the complainant, J. H. Bradford, in connection with his brother and son as partners, again engaged in the wholesale furniture business in Nashville, under the firm name of The Bradford Wholesale Furniture Co., in opposition to defendants, competing with them while stockholders of the Montgomery Furniture & Manufacturing Co., and later as partners under their old firm name and style of Montgomery Furniture Co.

Upon these facts the court of chancery appeals held and adjudged that the complainants had breached their contracts not to engage in the furniture business in Nashville for three years, from and after their sale to the defendants, and that this breach constituted a good defense to any recovery upon the note sued on, and dismissed their bill with cost. That court made no finding upon the subject of damages which the defendants claim they sustained by complainants breach of their contract.

Complainants have appealed from this decree, and assigned errors. We will dispose of the several errors assigned as a whole.

The first contention of the complainants is that when the defendants sold their partnership business to the Montgomery Furniture & Manufacturing Co., they ceased to be in the furniture business, and complainants were free to again engage in it, and in doing so they were not in opposition to the defendants, and committed no breach of their contract. This contention is predicated upon the assumption that complainants contracted with the defendants as individuals only, and that when the defendants sold their business to the Montgomery Furniture & Manufacturing Co., they as individuals ceased to do business, and that that conducted by the Montgomery Furniture & Manufacturing Co. was a separate and distinct business carried on by another person, a stranger to their contract and in no way entitled to its benefits. They further say that the contract

which they had made with the defendants was not assignable, and did not pass to the corporation with the sale of the business of the defendants, but was lost and destroyed by such sale. In support of this contention they cite and rely upon the case of *Bagby & Rivers Co.* v. *Rivers,* 87 Maryland, 400; 67 Am. St. R., 357. That case does go far towards supporting their position. It is there held that Bagby, who had purchased the good will of the firm of Bagby & Rivers, together with the right to continue the business in the old firm name from the retiring partner Rivers, with a contract upon the part of Rivers not to again engage in the same business, in the same place within a limited time, lost the benefit of the contract and released Rivers from his agreement when he assigned said contract to a corporation formed to continue the same business. We are, however, not satisfied with the reasoning of the court in that case, believing it to be too technical, and destructive of the spirit of the contract and the purpose and intention of the parties, and are unwilling to follow it. All contracts should be construed and interpreted, when it is possible to do so, in accordance with the intention of the parties, so as to effect the ends contemplated and contracted for by them. We think the complainants contracted with the defendants not to engage in the furniture busines for three years in competition with them, regardless of whether they conducted their business as individuals, partners, or stockholders in a corporation. The thing contracted for was protection against competition from

Bradford 'v. Furniture Co.

the complainants in order that the defendants might have the full benefit of the good will of the old business they had purchased.  It was immaterial to the complainants in what name the defendants conducted their business; that was a matter in which they were not interested.  Their contract was simply not to. engage in a business which would by competition be injurious to, or compete with the capital, energy and ability which the defendants were investing in and devoting to the furniture business in Nashville.  Complainants would probably have made the same contract for the same consideration, if defendants at the time had told them they intended to incorporate their business.  The entire business of the defendants, including all they had purchased from the complainants, was made over to the corporation, and they became the owners of nearly one-half of the capital stock, and were its chief officers.  They had the same money invested in the business of the corporation, and gave that business the same attention as they had previously their partnership business.  The business of the corporation, to the extent they were interested in it, was their business and was as much protected by the contract of the complainants as it was while it was conducted in their own name.  Certainly after January 1, 1904, when they withdrew from the corporation, their business was the same in all respects as it was when the contract was made with the complainants. We think to hold that the defendants lost the benefit of their contract by virtue of the vestiture of the title of

their business in an artificial person in order, as they thought, to carry it on more advantageously, would be to allow the complainants while recovering full consideration to defeat the object of their contract and to do the defendants great injustice. Complainants contracted not to engage in the furniture business for the time mentioned in opposition to the defendants. The agreement was absolute and without qualification. The change made by the defendants in the manner of conducting their business, in no way affected complainants. It did not in any way increase or lessen the obligation and burdens of their contract, and we cannot see upon what principle, consistent with reason and justice, that it should release them from its performance.

The good will which defendants had purchased from complainants, and the contract they had made with them for its protection, were property rights, valuable and assignable, and were not affected by the changes made by the defendants in the manner in which they conducted their business; the contract remained in full force and effect until it expired by its own limitations.

These conclusions, we think, are well supported by reason and the weight of authority. In the case of *Kramer* v. *Old et al.,* 119 N. C., 1, 56 Am. St. Rep., 650, the defendants sold their milling business at Elizabeth City, North Carolina, to the complainant and agreed not to again engage in the same business at that place; afterwards, with others they organized a corporation in which they became stockholders to compete with the

purchaser of their former business at Elizabeth City,
and the complainant filed a bill to enjoin them from car-
rying on said business. The defendants insisted that as
stockholders they were not violating the contract which
they had made as individuals; that the corporation was
a separate and distinct person and was not bound by
any contract made by its stockholders. The court in
granting the relief prayed said: "As a court of chan-
cery appeals we must declare that where injunctive re-
lief is asked, it is the duty of the court to restrain the
contracting parties from violating the spirit, as well as
the letter of the agreement. Under a fair and just in-
terpretation of its terms the stipulation meant that the
three defendants were not to engage in business so as to
bring their skill, names, and influence to the aid of any
competitor carrying on the same trade within the pro-
hibited limits. It was therefore a violation of the con-
tract on the part of the three mentioned, or either of
them to take stock in, help to organize, or manage a
corporation formed to compete with the plaintiff in his
business.

"While the courts will not restrain a party bound by
such a contract from selling or leasing his premises to
others to engage in the business which he has agreed to
abstain from carrying on or from selling to them the
machinery or supplies needed in embarking in it, a differ-
ent rule must prevail when it appears that the prohibit-
ed party attempts, not to sell outright to others, but to
furnish the machinery or capital, or a portion of either,

in lieu of stock in a corporation organized with a view to competition with the person protected by his contract against such injury.

"The three contracting defendants have presumably received the full value of the business sold and which is protected by their own agreement against their own competition, and equity will not allow them with the price in their pockets to evade their contract under the thin guize of becoming the chief stockholders in a company organized to do what they cannot lawfully do as individuals."

In the case of *Dunlop* v. *Gregory,* 10 N. Y., 241, 61 Am. Dec., 747, the defendants had contracted with the plaintiffs not to operate a steamboat upon certain waters, and had breached their contract. Plaintiffs sued for damages, and the defense was that the association of which the plaintiffs were members when the contract was made had been dissolved, and defendants were released from the obligation of their contract. The court in affirming a judgment for plaintiffs said: Because a part of the covenantees sold out their interest in the steamboats running on the Hudson river between the making of the agreement and its breach by the defendants, the remaining covenantees who retained their interest in such boats ought not to be deprived of their remedy on the agreement to recover the damages sustained by them by means of such breach. . . . The action can be sustained, if any one of the plaintiffs has a beneficial interest in the suit. The covenant inured

to the benefit of the covenantees who retained their interest in the steamboats running on the river. The other covenantees who had sold out and therefore could not be injured by the breach of the agreement are merely nominal parties to the suit. The dissolution of the Hudson River Steamboat Association is no defense to the suit. The agreement was not made with the plaintiffs as members of the association, or as copartners, but as individuals, and was intended to protect their interest, whatever that might be, in the steamboats running between New York and Albany. The obligation of the agreement is not at an end, because the Steamboat Association has been dissolved, or because the partnership of which the plaintiffs were members at the time of the making of the agreement has expired by efflux of time."

And in *Beard* v. *Sinex,* 6 Ind., 200, 63 Am. Dec., 381, Dennis-Mumford & Hooper, partners engaged in the agricultural implement business in the city of Richmond, Indiana, purchased the stock of Beard & Sinex, then in the same business, and who contracted with Dennis-Mumford & Hooper not to again resume that business in Richmond. Afterwards Dennis bought out his partners and continued the business. Beard and Sinex took in an additional partner and resumed the agricultural implement business. Dennis filed his bill to enjoin them from doing so. It was held that he succeeded to all the rights of his partners under the contract they had made, and that the defendants by taking in an additional partner could not escape their contract, and the agreement

they had made was enforced, according to its spirit and the intention of the parties.

In the case of *Pemberton* v. *Vaughan,* 10 Adolphus & Ellis, 87, 59 Eng. Com. Law, 87, the facts were as follows: The defendant was in possession of a house in which he made and sold ginger beer. For a consideration he gave possession of the premises, and sold the good will of his business to the plaintiff, agreeing not to again enter the same business within one mile of said premises. There was a breach of this agreement and action brought for the damages sustained. Upon matters urged in defense the court said: "It does not follow that the plaintiff will not require the protection of the agreement because he may not himself continue in the business; he may sell the business and sell it on better terms on account of the protection secured by the agreement."

In the case of *Hitchcock* v. *Koker,* 6 Adolphus & Ellis, 98, 33 Eng. Com. Law, 438, which involved a similar question, the court in sustaining the action, held: "If therefore it is not unreasonable, as undoubtedly it is not, to prevent a servant from entering into the same trade in the same town in which his master lives, so long as the master carries on the trade there, we cannot think it unreasonable that the restraint should be carried further, and it should be allowed to continue if the master sells the trade or bequeaths it, or it becomes the property of his personal representative; that is, if it is reasonable that the master can by an agreement secure himself from a diminution of the annual profits or his trade, it does

not appear to us unreasonable that these restrictions should go so far as to secure to the master the enjoyment of the price or value for which the trade would sell, or secure the enjoyment of the same trade to his purchaser, or legatee, or executor."

In the case of *Francisco* v. *Smith,* 143 N. Y., 488, is also in point. The facts were these: Francisco purchased the business of a baker in the town of Little Falls, N. Y., the seller contracting not to engage in a similar business in that town for five years. Francisco mortgaged the fixtures and other personal property used in the business, and made a default. The mortgage was foreclosed, the property purchased by the mortgagee, and the business suspended and closed for several months. Mrs. Francisco then repurchased the fixtures and other personal property and reopened the business in her own name, and purchased from her husband the contract which Smith had made with him. Smith opened a competing business, and she brought a bill to enjoin him from continuing it, and it was held: "It is unquestioned that the agreement entered into by the defendant not to engage in the bakery and confectionery business in Little Falls during the period of five years was legal and valid, and that courts of equity will enforce such agreements for the protection of the business to which they relate. Such an agreement is a valuable right in connection with the business it was designed to protect, and going with the business it may be assigned, and the assignee may enforce it, just as the assignor could

have enforced it, if he had retained the business. (*Diamond Match Co. v. Roeber*, 106 N. Y., 473.) "The agreement can have no independent existence or vitality aside from the business. If Mr. Francisco had not disposed of the business, and had not himself carried it on, there would have have been nothing for the agreement to operate upon; no grounds for equitable relief against a breach thereof, or for recovery in an action at law of anything except possibly nominal damages. He would not have lost the benefit of the agreement by omitting, for any definite time during the five years, to carry on the business. It may be assumed, and indeed it is conceded, that he retained the business until he made the assignment to the plaintiff, May 25, 1891. At that date there was nothing which prevented him from resuming and carrying on the business, and then having the full benefit of the defendant's agreement. But before that date the plaintiff had purchased the property, tools and fixtures connected with the business, and was in possession of the place where the business had been carried on by the defendant and subsequently by her husband. At that date he assigned to her the business and the good will thereof, and all his rights under the defendant's agreement. Mr. Francisco having the conceded right to sell all the property and the business together, and to assign the agreement at the same time, what is there in reason or principle that precludes him from first disposing of the property and place of business, and afterward selling and assigning to the same

person the business and the good will thereof, together with the agreement made for the protection of the business? We can perceive nothing. The assignment of the agreement goes with and is connected with the business as much in the one case as in the other."

In the case of *Upriver Ice Co.* v. *Denler,* 114 Mich., 297, the defendant sold one hundred and forty shares of the capital stock of the complainant, a corporation, to Bennett and contracted with him not to again engage in the ice business in Port Huron or near there, either as principal, agent, or employee. Bennett assigned this contract to Hayes, and he to the complainant. Denler purchased the Crystal Ice Co., and resumed the ice business in Port Huron. The complainant brought a bill to restrain him from continuing the business in violation of the contract which it held as assignee of Bennett, The defense was that the contract was personal in its nature and enforceable only by the person in whose interest it was made. The court granted complainant full relief saying: "But it is said that the complainant could take no interest in the contract as assignee. We have proceeded upon the assumption that the contract was made in the interest of the company, and was supported by some consideration. But even if this were not the fact, yet the written contract made with Bennett came to the company by assignment; and we think the complainant acquired all the rights of Bennett by the assignment. That very question was considered in *Jacoby* v. *Whit-*

*more,* 49 Law T. (N. S.), 335. The original contract was made between Whitmore and one Martin Cheek. Thereafter Cheek assigned to plaintiff all his beneficial interest and good will in the business, and it was held that plaintiff took by this assignment all the rights and interest which Cheek held under the contract. In the present case the complainant company was directly interested in protecting itself from the competition of Denler. The company was composed of the two, O'Neil and Hayes. Hayes had taken an assignment of the Denler contract and turned such rights over to the company by assignment, and we are of the opinion that the company had the right to enforce the contract."

It is therefore clear, we think, that the contract of the complainant not to engage in the furniture business in Nashville for three years from and after February 1, 1902, was not annulled or forfeited by any of the facts relied upon, and that they breached it when Bradford with others entered that business before the expiration of the time contracted for, both while the defendants were stockholders in the Montgomery Furniture & Manufacturing Co., and afterwards when they resumed business as partners.

The court of chancery appeals, as stated, was of the opinion that this breach was a complete defense to the recovery sought upon the note of defendants and dismissed complainants' bill. Complainants insist that granting the breach of their contract, as herein held, the effect is not necessarily to defeat their action, but that

the relief which the defendants were entitled to was either to enjoin them from again entering into business in violation of their contract, or an action to recover such damages as naturally and proximately followed such breach which might be recouped in this case, or recovered in a separate action at the election of the defendants. The determination of these questions depend upon whether the contract made between the parties was an entirety or not. If it was an entire contract supported by one consideration, or the agreement upon the part of the complainants to cease the furniture business in Nashville for three years was a condition precedent, there can be no doubt but what the decree of the court of chancery appeals is correct, and that the complainants' bill should be dismissed. In the case of *Coleman* v. *Hudson,* 34 Tenn., 465, Judge McKinney speaking for the court says: "The destinction between an entire and severable contract is clearly stated in the books. In the former the consideration is entire on both sides. It does not either by its terms or the implied intention of the parties contemplate or admit of apportionment upon a partial failure on either side; and the complete fulfillment of the contract by either is required as a condition precedent to the fulfillment of any part of the contract by the other. A severable contract is a contract, the consideration of which by its terms is susceptible of division and apportionment. There is in such contract no entirety of consideration on either side constituting a condition of the agreement;

and neither party can claim more than an equivalent for the actual consideration on his part. Story on Con., secs. 21 and 22.

"An entire contract in its legal interpretation is an unconditional agreement for the whole of the several articles, or number or quantity of goods contracted for; and precludes by its terms, and equally by the plain intention of the parties, all idea of divisibility. A severable contract, on the other hand, in its terms implies an apportionment.

"There is another class of cases noticed in some of the books of a mixed nature partaking of the character both of entire and severable contracts, and which may be considered as entire or severable according to the circumstances of the particular cases."

In Page on Contracts, sec. 1453, it is said: The question whether a covenant is independent or dependent, turns entirely upon the intention of the parties as shown in the entire contract, and the tests hereinafter suggested, while of great help, cannot be conclusive in every case. The question whether covenants are dependent or independent must be determined in each case upon the proper construction to be placed upon the language employed by the parties to express their agreement. If parties think proper they may agree that the right of one to maintain an action against another shall be conditional or dependent upon the plaintiff's performance of covenants entered into on his part. On the other hand, they may agree that the performance by

one should be a condition precedent to performance by the other. The question in each case is, which intent is disclosed by the language employed in the contract. It is said where the acts stipulated to be done are to be done at different times, the stipulations are to be construed as independent of each other. This, as a general rule, is correct, but it is subject to the intention of the parties as signified in the language of the contract. The great rule is to ascertain the intent of the parties from the language used."

Applying the principles here announced, we think that the contract in question was not entire, but severable, and that this clearly appears from its terms and the circumstances surrounding its execution.

The consideration of the note of the defendants was twofold; the good will of the firm of Bradford & Carson and their contract not to engage in the furniture business in Nashville for three years from the time of their sale to the defendants. These are separate and distinct considerations.

The good will of a firm is a species property, often very valuable and it may be sold and transferred. It is defined by Judge Story as follows: "This good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it received from constant and habitual customers, on account of its local

position or common celebrity or reputation for skill, or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partiality or prejudices." Story on Part., sec. 99.

A contract or agreement upon the part of the vendor of the good will not to resume the same business in the same locality, while adding greatly to it when sold, is no part of the good will and is not implied from a sale of it. It is the subject of a separate and distinct contract and in the absence of an express agreement of that kind the vendor is at liberty to resume his former business at his pleasure. This seems to be well settled. *Jackson* v. *Byrnes*, 103 Tenn., 700; *Howard* v. *Taylor*, 90 Ala., 243; Page on Con., sec. 374.

There can be no question but that the defendants acquired the good will of Bradford & Carson, and that it was delivered to them at the time of their purchase. There was certainly no failure of this part of the consideration of the note. The entire business of Bradford & Carson was turned over to the defendants, and Bradford the active partner, worked for them on a salary for several months. Performance of this part of the contract, it is clear, was not dependent upon any of the other parts of it as it was done immediately while the execution of all the other parts was deferred. The contract of complainants not to again engage in the furniture business while the performance of it was begun immediately, could not be completed until the expiration of the three years from its date. This contract upon the part of the

Bradford v. Furniture Co.

defendants to pay $3,000 as a consideration for the good will which had been delivered to them, and for the agreement on the part of complainants to cease business for three years, was to be performed in one year from its date. One year from the reception of part of the consideration, and two years before complainants could complete the other part of the consideration. It is clear, therefore, that it could not have been the intention of the parties that the performance of this contract by either party was conditioned upon its performance by the other. The terms of the contract render such an intention absolutely impossible of execution. We think therefore it is clear that the contract between the parties is severable, and that the breach by the complainants of that part of the argument binding them not to resume business for three years cannot defeat their action upon the note of the defendants. It would be unjust to so hold since the defendants have received by far the larger part of the consideration of their note, the good will of the firm of Bradford & Carson, and the performance of their contract to cease business for nearly one-third of the time agreed upon, which was certainly the most advantageous part of it to the defendants in enabling them to secure and hold the business of that firm.

We are of the opinion that the defendants are entitled to maintain their cross bill to recover from the complainants such damages as they sustained from the breach of complainants' contract not to re-enter the fur-

niture business in Nashville within three years, which are the natural and proximate results of such breach, to be set off against the decree upon their note, in part or whole, and if the same be in excess of such decree, to have a judgment therefor in this case.

Contracts of this character, when they, like the one under consideration, are reasonable and go no further than affording a fair protection to the good will purchased, do not interfere with the general interests of the public, and are not in restraint of trade, but valid and enforceable. *Jackson* v. *Byrnes,* 103 Tenn., 699; *Muse* v. *Swayne,* 70 Tenn., 251; *Anchor Electric Co.* v. *Hanks,* 171 Mich., 70; *Mell* v. *Mooncy,* 30 Ga., 413; *Lufborough* v. *Henderson,* 30 Ga., 482; *Herbert* v. *Ford,* 29 Maine, 546; *Warfield* v. *Boone,* 33 Md., 63; Sedgwick on Damages, sec. 1062; Page on Contracts, sec. 375.

The chief difficulty found in actions for breaches of contracts of this character is in ascertaining the damages which the plaintiff can recover, as they are generally uncertain, remote, and speculative. For this reason the most efficient remedy is an injunction inhibiting the defendant from again entering into the business he has contracted not to resume. The jurisdiction of courts of equity to grant this relief is well established. *Jackson* v. *Byrnes,* 103 Tenn., 699.

The right of the plaintiff to maintain an action at law upon a contract not to compete in business is equally well established, and the plaintiff has his election as to which remedy he will pursue, but when he elects to sue

for damages, he must be prepared to prove such damages as the law recognizes, or otherwise he can only recover nominal damages. The true measure of damages for a breach of contract of this sort is the injury the plaintiff has sustained. If he has sustained no damages which are the natural and proximate results of the breach, he has sustained no injury, and can only recover nominal damages. The measure of damages in a case of this character is well and fully stated in the case of *Howard* v. *Taylor,* 90 Ala., 242, cited with approval by this court in *Jackson* v. *Byrnes,* supra.

The facts of that case were as follows:

Howard sold to Taylor his bar and fixtures in the town of Decatur, with an unexpired lease upon the premises where he did business, and the good will of the concern for the aggregate price of $1,400, and promised and agreed that he would not carry on the same business at any other place in that town, but would remove his stock of goods and business to another county. This contract was breached by his resuming business in Decatur, and the action was to recover damages accruing to the plaintiff from such breach. The trial judge charged that the measure of damages was the difference between the value of the property sold and the aggregate price paid to the defendant. In reversing the judgment in favor of the plaintiff, Clopton, Judge, speaking for the court, said: "The question arises, does the charge upon the facts stated, and in view of the character of the stipulation and its connection with the good will,

assert the correct measure of recovery? In other words, is the compensation for the injury sustained by the breach of such promise arbitrarily measured by the excess of the gross amount paid over the value of the other property, without regard to the extent of the actual injury suffered? In an action founded on the breach of a contract, the general rule is that the plaintiff can only recover the natural and proximate damages caused by the breach complained of. Under this rule, the right of the plaintiff is to recover compensation for the injury he has sustained by the violation of the promise not to engage in the same business. The difficulty of proving the damages from the breach of such promise, arising from its nature, may be conceded. The uncertainty and difficulty of proving the resulting damages does not except the case from the operation of the general rule, and, in the absence of proof, positive or circumstantial, of injury, the plaintiff is entitled to recover only nominal damages. *Terry* v. *Eslava,* 1 Port., 273. The loss of profits, if there are data from which the amount may be ascertained with reasonable certainty; the diminution in value of the property sold, and the cost of the licenses for the unexpired term, all may be regarded as elements of the damages, which go to make up the measure of recovery. *Burkhardt* v. *Burkhardt,* 47 Ohio St., 474; *Mitchell* v. *Read,* 84 N. Y., 556; *Mellesch* v. *Keen,* 28 Beav., 453; *Rawson* v. *Pratt,* 91 Ind., 9.

"In such action, the plaintiff must not only show a right of recovery, but also the facts or elements which

Bradford v. Furniture Co.

compose the measure of recovery, unless the criterion by which the damage may be ascertained is provided by the contract, or by the law operating on the contract. Without proof of actual injury and its extent—from the mere fact that the defendant engaged in the same business in Decatur—the instruction assumed that plaintiff suffered damages to the extent of the difference between the gross price paid and the value of the property other than the good will. Though a promise not to engage in the same business imparts value to the good will, for the reason that it affords a protection to the business of the purchaser, not obtainable by the good will *simpliciter*, there is no distinction in the character and extent of the damage produced by a breach of such promise. In either case, engaging in rival business, and inducing the old customers of the seller and the public to deal with him, is the main source and cause of injury. The value and enjoyment of the good will are depreciated and interrupted by reason of the proximate damage to the business of the purchaser caused thereby. The plaintiff received the fixtures, and exercised the right to lease and occupy the house, and in so doing received the good will, so far as it pertains to, and is the incident of, the place of business—the advantage of patronage on account of its local position. Under these circumstances, a violation of the promise not to engage in the same business does not necessarily work the total destruction of the good will, nor deprive plaintiff wholly of its enjoyment and benefits. The rule as to the meas-

ure of damages, when there is the breach of a contract for the sale of specific chattels by a failure to deliver a part of them, is inapplicable. When the plaintiff elected his action on the contract for the recovery of the damages consequent on its breach, he took upon himself the burden of proving the extent of the injury. Merely showing a breach establishes the right of plaintiff to damages, but, in the absence of proof of the extent of the injury, he is entitled to recover only nominal damages.

"The charge given at the instance of the plaintiff is equally, if not more, objectionable. On the same hypothesis, substantially, as the charge just considered, and without any proof of actual damage, it authorized the jury to render a verdict, using its own language, for whatever amount you may think the plaintiff is damaged, not exceeding the amount claimed in plaintiff's complaint, and after deducting four hundred and fifty dollars admitted by plaintiff to have been received by him. The damages claimed in the complaint were $2,000 and the amount of the deduction was the proved value of the fixtures. Under the rule settled by our decisions, in an action *ex contractu* of this character, neither remote, consequential nor exemplary damages are recoverable. The plaintiff is entitled to just compensation for the actual injuries, which are the natural and proximate consequences of the wrong complained of; and such com-

Bradford v. Furniture Co.

pensation must not be left to a capricious or speculative decision, but awarded on established principles."

This case was again before the supreme court of Alabama (110 Ala., 473), upon the appeal of the plaintiff, Taylor, and that court in passing upon the same question said: "His (Taylor's) only real ground of complaint consists in Howard engaging in a competitive business in violation of his contract; for this breach he was entitled to recover such actual damages as he could show naturally and proximately resulted therefrom. Failing to furnish data from which the jury could properly estimate the actual damages, he could recover only a nominal sum.

"The difficulty of making proof from which the damages may be accurately computed, and the injustice of allowing the defendant to retain the full amount he received while violating his agreement with apparent impunity, furnish a sufficient reason why the plaintiff might have sought injunctive relief in a court of equity and obtained the specific performance of the contract; but these circumstances do not justify us in relieving the plaintiff of the burden of the action he elected to bring, nor in declaring for his benefit a measure of damages not based upon sound principles of law." *Taylor* v. *Howard,* 110 Ala., 470.

The principles announced by the supreme court of Alabama in these cases apply to the rights of the parties in this case, and will be followed by the chancellor in ascertaining the damages resulting to the cross com-

Bradford v. Furniture Co.

plainants from the breach of contract of Bradford & Carson not to again enter the furniture business in Nashville within the time they contracted not to do so.

This case will be remanded to the chancery court, where the damages sued for by cross complainants in their cross bill, as shown by the averments thereof, will be ascertained and set off, in whole or in part, as the proof may warrant, against the decree in favor of complainants, and if such damages exceed the amount of said decree, cross complainants will recover the same from the defendants to the cross bill.