IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2001 Session

## CHUCK ROBERTSON v. MELVIN G. GEORGE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-1950-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-02661-COA-R3-CV - Filed October 5, 2001**

---

This lawsuit arises out of a real estate contract. The plaintiff, Chuck Robertson, a residential home builder, contracted to purchase sixteen (16) lots from the defendant, Melvin George. After the parties entered into the contract, the plaintiff discovered that the official flood plain designation had been adjusted to include nine (9) of the lots the plaintiff contracted to purchase and filed suit on the theories of intentional misrepresentation, negligent misrepresentation, mutual mistake, unjust enrichment, and violation of the Tennessee Consumer Protection Act. The defendants filed a counter-complaint for breach of contract. The parties filed cross-motions for summary judgment. The trial court dismissed the plaintiff's action holding that the mistake was a mistake of law. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Ronald B. Buchanan, Hendersonville, Tennessee, for the appellant, Chuck Robertson.

Larry D. Ashworth and Peter D. Heil, Nashville, Tennessee, for the appellees, Melvin G. George and Jeffrey George.

### OPINION

The defendants are father and son. The defendant father, Melvin George, purchased land in 1987. In 1998, the defendants, Melvin George and his son, Jeff George, obtained approval from the Metropolitan Planning Commission and Davidson County to develop a residential subdivision on the property, Covington Place Subdivision ("Covington Place"). The defendant, Melvin George, put up the money and the defendant, Jeff George, handled the development and sale of the lots. The property was subdivided into twenty-three (23) lots. The subdivision plat was recorded on January 7, 1998. The subdivision plat in the Register of Deeds Office stated "[t]he property shown hereon

is not included in areas designated as 'special flood hazard' on the latest Flood Insurance Program Map dated June 15, 1982." The plat contained the date on which the engineer certified the accuracy of the plat on September 9, 1997.

The Federal Emergency Management Agency ("FEMA") amended the flood map in February 1998 by raising the 100-year flood plain by approximately two (2) feet. The lots numbered 1, 2, 3, 18, 19, 20, 21, 22, and 23 were designated as Special Flood Hazards as a result of the amendment.

In the fall of 1998, the plaintiff, a residential home builder, contacted the defendant, Jeff George, to discuss the possibility of purchasing lots in Covington Place.

The plaintiff, an experienced home builder, met the defendant, Jeff George, at the property. Jeff George showed the plaintiff a copy of the subdivision plat which indicated that none of the property was in the flood plain.

The plaintiff and his wife went to the Davidson County Register of Deeds to verify that the plat shown to them by the defendant had not been updated. They also went to the office of the professional engineer that prepared the plat and obtained a copy of the plat.

The parties entered into a written contract titled "Real Estate Purchase Agreement" on December 15, 1998, wherein the plaintiff agreed to purchase sixteen (16) residential lots in Covington Place at a price of $18,500.00 per lot. The plaintiff paid $10,000.00 earnest money upon execution of the contract. One sixteenth (1/16) of the earnest money was to be credited to the moneys due upon closing of each lot. The contract further provided that "[b]uyer reserves right upon 30 days notice to seller to end agreement with seller retaining remaining earnest money and buyer paying seller next 30 days interest when normally due." The contract was silent as to allocation of risk in case of mistake. The plaintiff purchased twelve (12) lots before learning of the flood plain problem.

The plaintiff attempted to secure building permits for some of the lots. He was informed by the Metropolitan Government Codes Department that some of the lots were indeed in a flood plain. The two foot change in the flood plain elevation affected nine (9) of the lots the plaintiff contracted to purchase. The plaintiff could still build homes on the lots if he fillrd them to bring them to the minimum elevation above the flood plain. The plaintiff estimated that the cost to bring the lots to the proper elevation is between $2,800.00 and $4,800.00 per lot. On March 7, 1999, the plaintiff met with the defendant, Jeff George, and the plaintiff informed the defendant that he was not going to buy the remaining four (4) lots.

The plaintiff filed a Complaint against the defendants asking the court to rescind portions of the real estate purchase agreement dated December 15, 1998. The plaintiff alleged that the defendant represented to him that the sixteen (16) lots he contracted to purchase were "residential building lots" and were not in a flood plain.

On January 14, 2000, the defendants filed an Answer denying the allegations and filed a Counter-Complaint alleging that the plaintiff had breached the contract by refusing to purchase the remaining lots. The defendants filed a Motion for Summary Judgment on March 9, 2000. The plaintiff filed a Response and Counter Motion for Summary Judgment on April 17, 2000. The cross-motions were heard on May 25, 2000.

On June 15, 2000, the trial court filed a Memorandum and Order denying the plaintiff's Motion for Summary Judgment, dismissing the plaintiff's claims, and holding that the plaintiff had breached the contract with the defendants as a matter of law. The trial court awarded the defendants a judgment of $5,147.50 against the plaintiff and held that the defendants were entitled to specific performance requiring the plaintiff to purchase the remaining lots. The memorandum and order stated:

> The Court dismisses the plaintiff's claim of intentional misrepresentation on the grounds that the record raises no genuine issues of material fact to warrant a trial on the claim of intentional misrepresentation. . . .
>
> . . . .
>
> The plaintiff suggests that the defendants made negligent misrepresentations by providing the plaintiff, in December of 1998, a plat which showed that the subdivision was not subject to the flood plain when, in fact, lots in the subdivision had been placed under the flood plain designation in February of 1998. The Court determines, however, that these circumstances do not raise facts to warrant a trial on the claim of negligent misrepresentation. . . .
>
> . . . .
>
> The Court dismisses the plaintiff's cause of action for unjust enrichment. . .
>
> The Court dismisses the plaintiff's cause of action for mutual mistake of fact. The Court determines that in this case there is not a mistake of fact but of law. The plaintiff was under the misapprehension that the flood plain law did not apply to the lots in issue. The Court adopts the legal authority cited by defendants' counsel: "Ignorance of the law is not a mistake of fact, but of law. Ignorance of the law is no ground to rescind agreements or to set aside the solemn act of the parties." *Davis v. Metropolitan Government of Nashville and Davidson County*, 620 S.W.2d 532, 535-36 (Tenn. Ct. App. 1981).
>
> The Court dismisses the plaintiff's cause of action under the Tennessee Consumer Protection Act. . . .
>
> In sum, as to the complaint, the Court concludes that what has happened in this case is that there was a mistake concerning the law. . . .
>
> Turning to the defendants' counterclaim, the Court determines that the defendants are entitled to summary judgment for breach of contract.

On July 10, 2000, the plaintiff filed a Motion to Alter or Amend. On September 20, 2000, a Memorandum and Order was entered by the trial court stating:

When the parties argued the motion for summary judgment, the Court overlooked a handwritten addendum on the second page of the contract which states that the "Buyer [plaintiff] reserves right upon 30 days notice to Seller to end agreement with Seller retaining remaining earnest money and Buyer paying Seller next thirty days interest when normally due." The record established that the buyer/plaintiff gave notice to the seller by letter dated March 14, 1999, that the buyer did not intend to purchase the remaining lots. That letter was followed by another letter dated June 17, 1999, from the plaintiff's attorney notifying the defendant that the plaintiff was cancelling the contract as to the purchase of additional lots. Accordingly the record established, as a matter of law, that the plaintiff, as per the parties' agreement, ended the agreement. Under these circumstances, the defendants are not entitled to specific performance. As a matter of law the relief to which the defendants are entitled is retention of the remaining balance of the earnest money and interest for 30 days after receipt of the date of notification.

The plaintiff now appeals.

Appellant asserts that the trial court erred by granting the defendants' summary judgment as to the plaintiff's claims for intentional or fraudulent misrepresentation, negligent misrepresentation, mutual mistake, and violation of the Tennessee Consumer Protection Act. Further, the appellant asserts that the trial court erred in denying the plaintiff summary judgment based on mutual mistake.

The standard for reviewing summary judgments on appeal is well-settled and familiar. Appellate review is de novo without a presumption of correctness. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001) (citing *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000)). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. "In reviewing the record, '[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Webber*, 49 S.W.3d at 269 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

A summary judgment should be granted only when there are no genuine factual disputes with regard to the claim or defense, and when the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001). Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion--that the moving party is entitled to a judgment as a matter of law. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d 208, 215 n. 5 (Tenn. 1993).

Plaintiff's Intentional and Negligent Misrepresentation Claims

The plaintiff has asserted on appeal that the trial court erred in granting the defendants' motion for summary judgment as to the intentional and negligent misrepresentation claims. We first address the plaintiff's argument with regard to the intentional misrepresentation claim. Specifically, the plaintiff alleges that there are three disputed questions of fact concerning alleged misrepresentations which include: (1) The plaintiff testified in his deposition that the defendant, Jeff George, specifically told him the lots were not in a flood plain; (2) the subdivision plat given to the plaintiff contained the representation that none of the property was in a flood plain; and (3) the Real Estate Purchase Agreement represented that the lots were "residential building lots."

"The elements of intentional misrepresentation are based on the common law action for fraud and deceit." *Ogle v. Runion*, No. 03A01-9108-CV-307, 1992 WL 9438, at *2 (Tenn. Ct. App. Jan. 24, 1992). An action for intentional or fraudulent misrepresentation contains four elements: (1) an intentional misrepresentation of material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the misrepresentation involves a past or existing fact. *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn. Ct. App. 1993). Summary judgment is appropriate when "the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd*, 847 S.W.2d at 213.

Next, we turn to the elements of negligent misrepresentation. The plaintiff has asserted on appeal that the trial court erred in granting the defendants' motion for summary judgment as to the negligent misrepresentation claim.

Tennessee adopted Section 552 of the Restatement (Second) of Torts "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997); *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991). Section 552 provides in pertinent part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Cummins v. Opryland Productions*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *6 (Tenn. Ct. App. March 7, 2001) (citing Restatement (Second) of Torts, § 552 (1977)).

Thus, a plaintiff seeking damages for negligent misrepresentation must prove the following elements:

(1) that the defendant was acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest;
(2) that the defendant supplied faulty information meant to guide others in their business transactions;
(3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and
(4) that the plaintiff justifiably relied upon the information provided by the defendant.

*American Cable Corp. v. ACI Management, Inc.*, No. M1997-00280-C0A-R3-CV, 2000 WL 1291265, at *6 (Tenn. Ct. App. Sept. 14, 2000) (citing *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn.1997); *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)).

We find no merit in the plaintiff's misrepresentation claims. The trial court correctly determined that the plaintiff was unable to establish essential elements of the intentional misrepresentation and the negligent misrepresentation claim. The record before us reveals that the defendants did not have any knowledge that the Federal Emergency Management Agency amended the flood map in February 1998. Further, the record does not contain any information that supports that the defendants knew the lots were placed in the flood plain. Both defendants testified in depositions that they were unaware the lots were in a flood plain and the record contains no evidence to the contrary. As such, no reasonable person could conclude that the defendants made an intentional misrepresentation of a material fact upon which the plaintiff relied or that the defendants had knowledge of the representation's falsity.

An additional ground for dismissing the plaintiff's cause of action for intentional misrepresentation and also for negligent misrepresentation is that the record does not show an issue of material fact as to the plaintiff's reliance on the defendants' representations. The plaintiff admitted he did not rely on the defendants' representations that the plat was correct. The plaintiff was an experienced home builder and performed his own research. The plaintiff and his wife went to the Metro courthouse to perform their own research. The plaintiff's wife, Donna Robertson, testified in her deposition that "we went to the courthouse to see if that was the original plat because I mean we didn't know if that was the original or what it was. We weren't, you know, just going to go by his word that that was it. So we went to see if there was another updated or revised copy." The plaintiff testified that "[w]e checked to make sure there had been no revisions to the plat," and he found through his research that there were no revisions. The facts of the record and all reasonable

inferences drawn from them establish that the defendants believed that the lots were not in the flood plain. Even the plaintiff's efforts did not reveal the amendment to the flood plain level.

The defendants did not fail to exercise reasonable care in obtaining or communicating information regarding the lots to the plaintiff. The defendants employed professional engineers to assist them in obtaining approval for the subdivision from the Metropolitan Planning Commission. The subdivision plat reflected that the lots were not in the flood plain and was approved by the Metropolitan Planning Commission of Nashville and Davidson County and recorded in the Register of Deeds Office for Davidson County on January 7, 1998. The flood plain was changed less than a month after the plat was approved and recorded. The plaintiff was an experienced home builder, performed his own research at the Davidson County courthouse, and obtained a copy of the plat from a professional engineer. Based upon the record, the plaintiff cannot prove the necessary elements for the negligent misrepresentation claim and summary judgment was appropriate.

### Plaintiff's Tennessee Consumer Protection Act Claim

As to the Tennessee Consumer Protection Act the trial court concluded that the record does not establish that the defendants in any way acted unfairly, deceitfully, or made misrepresentations. After careful review of the record, we can find nothing in the record to support the plaintiff's assertion that the defendants intentionally or negligently misrepresented the lots or that the defendants failed to exercise reasonable care in providing the plaintiff with information. The defendants did not act unfairly, deceitfully, or made intentional misrepresentations in any way. Thus, summary judgment was proper.

### Mutual Mistake

Relying primarily on *Davis v. Metropolitan Government of Nashville, et al.*, 620 S.W.2d 532 (Tenn. Ct. App. 1981), the trial court held that the mutual mistake of the parties in not realizing that some of the lots in issue were in the revised flood plain designated by the Federal Emergency Management Agency in February 1998 was a mistake of law and not a mistake of fact. In this respect the trial court is in error.

*Davis* involved a case where the plaintiff, thinking his property was in a zoned area forbidding "junk vehicles" disposed of such vehicles only to thereafter discover that his property was exempted from this provision of the zoning ordinance by a ten year grandfather clause. He then sought to recover from Metropolitan Nashville for the wrongful enforcement of a zoning ordinance. Metropolitan Nashville did not force him to sell his junk vehicles but rather he did so voluntarily under the mistaken impression that in continuing to store the cars he was violating the zoning ordinance. The court held that a party's ignorance of the law provides no basis for recovery. *Id.* at 535.

In the case at bar, however, when the parties entered into their December 18, 1998 contract, the lots in issue were either in the designated FEMA February 1998 flood plain or they were not.

This is fact not law. At least at this summary judgment stage material issues of fact are evident as to whether or not both parties labored under a mistake of material fact.

In *Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn. 1978), the Tennessee Supreme Court observed:

> A purchaser who has been the victim of a misrepresentation or who has been induced to contract through a mistake of material fact mutual to him and his vendor, is afforded by courts both of law and equity with a number of alternate remedies, including actions for rescission and restitution, actions for breach of contract and actions in tort for misrepresentation. *See generally* 12-13 Williston, *Contracts* §§ 1469, 1523, 1542, 1598 (3d ed. Jaeger 1970); 5 Corbin, *Contracts* §§ 1105 et seq. (1964); 37 Am.Jur.2d, *Fraud and Deceit* §§ 327 et seq. (1968). All that the law requires of such a purchaser is that he elect consistently among the remedies available to him. Of course, by his conduct he may not both affirm and at the same time disaffirm his contract. *See Lamborn & Co. v. Green & Green*, 150 Tenn. 38, 51, 262 S.W. 467, 470-71 (1923); 12 Williston, *Contracts* § 1528 (3d ed. Jaeger 1970).

*Isaacs*, 566 S.W.2d 532, 537-38.

In determining whether or not the remedy of recission is available to the plaintiff, it is necessary to determine whether or not the contract in issue is entire or severable. If the contract is entire, Plaintiff cannot restore the status quo as Plaintiff has already built homes on and sold the seven lots not in the amended flood plain. Only the five lots purchased by the plaintiff that are located in the amended flood plain and the four lots remaining unpurchased by the plaintiffs are involved. In *Loveday v. Kate*, 854 S.W.2d 877 (Tenn. Ct. App. 1992), this Court observed:

> It is well settled in this jurisdiction that a contract cannot be rescinded without restoring the "status quo." *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135 (1911); *Hawkins v. Byrn*, 150 Tenn. 1, 261 S.W. 980 (1923); *Jones v. Mosley*, 29 Tenn. App. 559, 198 S.W.2d 652 (1947); *Isaacs v. Boker*, 566 S.W.2d 532 (Tenn. 1978); 37 Am.Jur.2d Fraud and Deceit § 335 p. 447; 13 Williston, Law of Contracts § 1594 p. 579.

*Loveday*, 854 S.W.2d 877, 881 (Tenn. Ct. App. 1992).

The remedy of recission is available, however, if the contract is severable. This Court has ruled:

> As a general rule, a contract can only be rescinded *in toto*. A contract can be partially rescinded where the contract is severable. A contract is severable where each part is so independent of each other as to form a separate contract. The basic premise behind disallowing a party to affirm in part and repudiate in part is that one should not be able to "accept the benefits on the one hand while he shirks its disadvantages

on the other." 17A C.J.S. *Contracts* § 416 (1963); *See Baird v. McDaniel Printing Co., Inc.*, 25 Tenn. App. 144, 153 S.W.2d 135 (1941).

*James Cable Partners v. Jamestown*, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991).

The contract in the record before the Court is a severable one. Each lot is to be purchased for $18,500.00 per lot. One sixteenth of the $10,000.00 earnest money payment is apportioned to each of the sixteen (16) separate lots forming a part of the original contract. Of perhaps more significance, the addendum to the contract allows the purchaser to refuse to purchase particular lots suffering for such refusal only loss of his earnest money and interest.

This Court has held:

> A contract may have several parts. A breach of one part will excuse all of the promised performance by the other party where the contract is to be performed only as a whole. *Brockett v. Pipkin*, 25 Tenn. App. 1, 149 S.W.2d 478, 483 (Tenn. App. 1940). In such a case, we call the contract "entire," and "the complete fulfillment of the contract by either side is required as a condition precedent to the fulfillment of any part of the contract by the other." *Bradford & Carson v. Montgomery Furniture Co.*, 115 Tenn. 610, 92 S.W. 1104 at 1109 (Tenn. 1906).
> If, however, "several things are to be done under a contract, and the money consideration to be paid is apportioned to each of the items, the contract is ordinarily regarded as severable." 17A Am.Jur.2d *Contracts* § 418. In that case, "neither party can claim more than an equivalent for the actual consideration on his part." *Bradford and Carson v. Montgomery Furniture Co.*, 115 Tenn. 610, 92 S.W. 1104 at 1109 (Tenn. 1906).

*Hogan v. Coyne Intern. Enterprises Corp.*, 996 S.W.2d 195, 200 (Tenn. Ct. App. 1998).

At this summary judgment stage of the case, we determine only that the case must be tried on its merits as to mutual mistake of fact and that the contract, as it appears before this Court at this time, is a severable one.

The remedies in this situation largely address themselves in the first instance to the discretion of the Chancellor. *Wilson v. Mid-State Homes, Inc.*, 384 S.W.2d 459, 464 (Tenn. Ct. App.1964).

As to the issues of mutual mistake of fact and any evidence that might reflect upon the severability of the contract, the judgment of the Chancellor is reversed and the case remanded for trial on the merits. The action of the trial court in granting summary judgment to the defendants on the issues of intentional and negligent misrepresentation and violation of the Tennessee Consumer Protection Act is affirmed.

Costs of the cause are assessed equally to the parties.

_____
WILLIAM B. CAIN, JUDGE