Robert F. JACKSON, III,
Plaintiff-Appellant,

v.

The MOSKOVITZ AGENCY, INC., Perry
Moskovitz, Robert P. Jackson, III, Ma-
ble Naron, and June Trimble, Defend-
ants-Appellees,

and

Alexander & Alexander, Inc., Defendant.

Supreme Court of Tennessee,
at Nashville.

April 16, 1984.

Rehearing Denied July 16, 1984.

Steven A. Riley, R. Dale Grimes, Bass, Berry & Sims, Nashville, for plaintiff-appellant.

Harris A. Gilbert, William W. Gibson, Gilbert, Frank & Milom, Nashville, for defendants-appellees.

## OPINION

FONES, Chief Justice.

The issue on appeal is whether a non-assignable covenant not to compete between an employee and the corporation that employed him can be enforced by the former shareholders of that corporation after it has been liquidated and all its assets distributed.

The trial court held the covenant was unenforceable. The Court of Appeals reversed holding that the Moskovitz shareholders as distributees of the assets of Moskovitz Agency, Incorporated (MAI) in liquidation obtained the covenant without any assignment or transfer thereof and could enforce the covenant.

A brief summary of the salient facts is as follows. On December 1, 1978, Jackson, the owner of Service Insurance Agency, sold his company, including both its physical and insurance assets, to MAI, another insurance agency. On the same day, a five year "no-cut" employment contract was entered into between Jackson and MAI. The following are relevant provisions from that employment agreement:

5. *Restrictive Covenant:*

A. For a period of five (5) years after December 1, 1978, for a consideration of Twenty-nine Thousand ($29,000.00) Dollars, payable, Four Thousand ($4,000.00) Dollars at closing and Twenty-five Thousand ($25,000.00) Dollars in five (5) equal annual installments of Five Thousand ($5,000.00) Dollars, payable annually on each anniversary date of this contract, from Company to Robert F. Jackson, III. Jackson hereby covenants that he will never, directly or indirectly, during the five-year term, solicit or accept any insurance business of any nature from any of the insurance accounts being sold and transferred pursuant to this Agreement, nor will he, directly or indirectly, assist or be employed by any other party in soliciting or accepting any insurance business of any nature from any of said accounts.

. . . .

7. *Miscellaneous:*

. . . .

B. Assignment—This Agreement is personal to each of the parties hereto, and neither party may assign or delegate any of the rights or obligations hereunder without first obtaining a written consent of the other party.

. . . .

10. In the event of bankruptcy or insolvency of the Company, the Employee will not be bound by the restrictive covenants set forth herein.

On September 30, 1982, MAI was liquidated and its assets including Jackson's covenant not to compete, were distributed to its shareholders. On that same date, a statement of intent to dissolve pursuant to T.C.A. § 48–1002, along with a written consent to the dissolution of the corporation signed by all the shareholders, was sent to the Secretary of State. On October 1, 1982, the shareholders sold all their insurance agency assets to Alexander and Alexander, Inc. (A & A). However, Jackson was notified by a letter that any "contract rights," which plainly meant his covenant not to compete, were being retained "by the sellers of the former Moskovitz Agency, Incorporated." Jackson was the only MAI employee not to be hired by A & A.

The purchase price of the MAI assets was ultimately determined after MAI disclosed its net commission income to A & A for the twelve month period prior to the sale. The buy-sell agreement between MAI and A & A in addition to a base price, provided for a contingency "earn-out" arrangement whereby the MAI shareholders would get a 165% bonus for all additional MAI insurance commissions produced over and above the previously disclosed net commission income. In other words, if A & A realized additional net commission income from the purchased assets over the amount that MAI had warranted it had received in the previous year, then the MAI shareholder would get an incentive-type bonus on all the new commissions acquired. This "potential-bonus" period extended from the date of the sale, October 1, 1982, until September 30, 1983, inclusive.

In response to being told that the former MAI shareholders intended to seek enforcement of the restrictive covenants if Jackson attempted to solicit any of his former customers, Jackson filed this declaratory judgment action.

The chancellor held that "once the business was dissolved there was no good will (the essence of a business) to protect. When that was lost, the former shareholders could not [sic] longer assert rights to enforce the covenants." Accordingly, a preliminary injunction was granted prohibiting defendants from attempting to en-

force the restrictive covenants in the employment agreement.

The Court of Appeals, relying on *Bradford and Carson v. Montgomery Furniture Co.*, 115 Tenn. 610, 92 S.W. 1104 (1905), modified the chancellor's ruling. The preliminary injunction sought by plaintiff Jackson was granted, but only after October 1, 1983. At all times prior to October 1, 1983, Jackson was enjoined from the violation of his covenant. The Court of Appeals reasoned that as long as the covenantees retained a financial interest in the performance of the covenant, in such a way that they will benefit by the performance of the covenant and lose by its violation, the covenant was enforceable. The "financial interest" found sufficient to keep alive the covenant was the "retention of an interest in the future profits of the business of the corporation [MAI] in the hands of the successor [A & A]." As that financial interest [the "earn-out" arrangement] was to expire on October 1, 1983, the covenant not to compete would at that time become unenforceable.

The *Bradford* case, cited as controlling by the Court of Appeals, is also heavily relied upon as authority in support of the contentions of both parties.

The pertinent facts of *Bradford* are as follows: Bradford and Carson sold their partnership, a furniture business, to Montgomery Furniture Company. Montgomery Furniture Company was operated by R.J., B.W. and W.W. Montgomery also as a partnership. The Bradford and Carson business sold to the Montgomery's consisted of furniture, fixtures and goodwill. The goodwill and their covenant not to compete for three years was valued at $3,000.

About five months after the sale, the Montgomerys organized a corporation, the Montgomery Furniture & Manufacturing Company, and transferred all the assets of their partnership, including the covenant, to the new corporation which continued in the furniture business. The Montgomerys owned $30,000 of $72,000 capital stock in the new corporation, were its chief officers and managed the business.

Approximately six months after the Montgomery partnership converted into corporate form, and within three years of the execution of the covenant not to compete, Bradford again engaged in the furniture business in competition with the Montgomerys.

Bradford argued that he had contracted with the Montgomerys as individuals only, and that when they sold their assets to the new corporation, they as individuals ceased to do business, and the business conducted by the new corporation was a "stranger" to their contract and in "no way entitled to its benefits."

The Court reasoned, after first noting that the Montgomerys owned nearly half of the new corporation's stock and were its chief officers:

Complainants contracted not to engage in the furniture business for the time mentioned in opposition to the defendants. The agreement was absolute and without qualification. The change made by the defendants in the manner of conducting their business, in no way affected complainants. It did not in any way increase or lessen the obligation and burdens of their contract, and we cannot see upon what principle, consistent with reason and justice, that it should release them from its performance. 115 Tenn. at 617–618, 92 S.W. 1104.

The Court held the covenant not to compete was enforceable against Bradford, remanded for an assessment of damages, and stated:

The good will which defendants had purchased from complainants, and the contract they had made with them for its protection, were property rights, valuable and assignable, and were not affected by the changes made by the defendants in the manner in which they conducted their business; the contract remained in full force and effect until it expired by its own limitations. 115 Tenn. at 618, 92 S.W. 1104.

The Court of Appeals first noted that the factual differences between *Bradford* and

the instant case were immaterial. They then found the "common denominator" to be "the enterprise was continued under another name" with the covenantees retaining a financial interest in the performance of the covenant. We cannot agree with the Court of Appeals' analysis.

There was a major difference between the two types of covenants given by the covenantors. The *Bradford* covenant was "absolute and without qualification" and was silent as to its assignability. In sharp contrast, Jackson's covenant was personal, expired on the bankruptcy or insolvency of MAI and was expressly *not* assignable without his written consent.

■ *Bradford* holds that a covenant not to compete is a property right and as such, in the absence of a provision prohibiting assignment, is both assignable and transferable. When the Montgomerys sold their partnership to the new corporation, one of the assets transferred was the covenant. The covenant properly passed to the new corporation and became enforceable by that corporation.

■ The Jackson covenant, however, was personal to Jackson and MAI and was specifically not assignable without written consent. MAI was liquidated and all its assets distributed to its shareholders. This distribution constituted a transfer from MAI to others equivalent to an assignment. An assignment is defined in Black's Law Dictionary, Special Deluxe Fifth Edition, p. 109 as:

> A transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein.

To transfer Jackson's covenant not to compete to the former shareholders of MAI required an assignment. Jackson did not give written consent to the assignment. It therefore follows that since MAI has been liquidated and all its assets distributed, the covenant not to compete in the hands of the individuals who were former shareholders of MAI is unenforceable.

■ The "financial interest" issue raised by the Moskovitz shareholders is patently untenable. Those individuals contended that they acquired the covenant not to compete without an assignment or transfer thereof from the liquidated corporation; that they have not transferred it to A & A, which is an implicit concession that that would be an assignment; that although they are not engaged in the insurance business further assert that they can prevent Jackson from competing with A & A because they built into the sale price of the assets acquired from MAI and sold to A & A, a formula tied to A & A's insurance premium volume. We hold that such an interest is not comparable to the interest of the successors to the original party to the covenant not to compete in *Bradford* and we are not disposed to extend the *Bradford* rule.

Accordingly, the judgment of the Court of Appeals is reversed and that of the trial court reinstated. Costs are adjudged against defendants.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

A petition to rehear has been filed, predicated upon the assumption that the Court overlooked consideration of paragraph 5(D) of the original agreement dated December 1, 1978, and a paragraph in the agreement of December 1, 1981.

The contention that those paragraphs rendered the non-assignability clause ineffective after December 1, 1981, is entirely without merit.

The petition is respectfully denied.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.