IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2007 Session

# PACKERS SUPPLY CO. v. ERIC H. WEBER, ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 53121      J. Mark Rogers, Judge**

_____

**No. M2007-00257-COA-R3-CV - Filed April 14, 2008**

_____

A corporation filed suit against two of its former employees for violating the terms of a non-compete agreement. The defendants argued that the agreement was rendered unenforceable by changes in the structure of the business and their relationship to it after the agreement was executed. The business was originally a sole proprietorship, and the defendants worked for it as independent contractors. Several years later, the business was chartered as a corporation, but with no change in its ownership or in its day-to-day operations. The defendants became employees of the corporation while keeping the same compensation, working conditions and duties as before. The trial court granted summary judgment to the employees, ruling that the corporation had no standing to sue because it was not a party to the original agreement. We reverse, because the non-compete agreement was assigned to the corporation by operation of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which FRANK G. CLEMENT and JEFFREY F. STEWART, JJ. joined.

Frank M. Fly, Murfreesboro, Tennessee, for the appellant, Packers Supply Co. f/k/a Packer's Supply House Company.

W. Gary Blackburn, Gordon H. Boutwell, Nashville, Tennessee, for the appellees, Eric H. Weber and Robert S. Rini.

**OPINION**

### I. AN AGREEMENT NOT TO COMPETE

In 1997, Scott Lau began working full-time with a business he founded called Packer's Supply House. The business furnishes customers nationwide with equipment and parts for meat processing and packaging. According to Mr. Lau, it has earned a substantial market share in a highly specialized field. In February of 2001, he hired Eric Weber as a customer service and sales

representative. In April of 2002, he hired Robert Rini for the same type of position. Mr. Weber and Mr. Rini are the defendants in this case.

At the time he hired them, Mr. Lau had the defendants sign identical contracts titled "Confidentiality/Non-Competition Agreement." Among other things, the agreements prohibited the signatories from competing with Packer's Supply House for a period of five years after leaving employment with the business or from making use of confidential information or customer lists acquired during their employment.

The agreements recited that they were entered into between "Packer's Supply House Company, a Tennessee corporation" and "The Employee." However, it is undisputed that the company was actually a sole proprietorship at the time and that for tax purposes Mr. Lau treated the defendants as independent contractors. He did not withhold FICA taxes or income tax from their paychecks, and he reported their payroll disbursements to the IRS on 1099 forms rather than W-2's.

On September 9, 2002, Mr. Lau chartered his business under the laws of the State of Tennessee as a for-profit corporation under the name of Packer's Supply Co. Mr. Lau became the sole shareholder and President of the new corporation. Mr. Weber was listed on corporate documents as the corporation's Secretary and as a member of its Board of Directors. Mr. Lau subsequently provided Mr. Weber and Mr. Rini with W-4 tax forms so he could report their income as employees. After January 1, 2003, he began withholding FICA and income tax from the paychecks of both defendants.

Despite these changes in the legal status of the parties, it is undisputed that the operations of the business did not change, nor did the defendants' conditions of employment. During the following three years, the formula for their commission-based income remained the same. They used the same office and the same telephone, continued to be provided with a company vehicle and a credit card for business use, kept the same group medical and dental insurance, and they called on the same customers as they had done before Mr. Lau incorporated the business.

In September of 2005, Mr. Lau presented Mr. Weber and Mr. Rini with new non-compete agreements and asked them to sign. According to Mr. Lau's affidavit, the reason for the request was that he was in negotiations for a merger of his business with another company, the other company required all employees to be bound by a non-compete agreement as a condition of merger, and he had temporarily misplaced the non-compete agreements signed by the defendants. He testified that the merger eventually fell through and that he subsequently found the missing agreements.

The defendants tell a different story in their affidavits. According to them, Mr. Lau told them that "the old non-compete agreements with Packer's Supply House Company were no good" and he instructed them to sign. The defendants both refused to sign the new agreements. Mr. Lau fired Mr. Rini on November 30, 2005. Mr. Weber resigned from the company on December 2, 2005.

2

Shortly thereafter, the defendants obtained a business license and opened a business called GIC Supply, which offered the same or similar products as had Mr. Lau's company. It dealt with the same or similar vendors and sold to the same or similar customers and, thus, it competed directly with Packer's Supply Co.

## II. LEGAL PROCEEDINGS

On February 8, 2006, Scott Lau filed a complaint in the Circuit Court of Rutherford County, in the name of "Packer's Supply Co. f/k/a Packer's Supply House Company." The complaint recited that Mr. Weber and Mr. Rini had violated their non-compete agreements by operating a business in direct competition with Packer's Supply Co. It stated that Mr. Lau had asked them to cease and desist, both verbally and in writing, and that they had refused. Mr. Lau asked the court to grant him injunctive relief as well as compensatory and punitive damages, attorney fees and litigation expenses.

The court granted the plaintiff the temporary restraining order (TRO) it had asked for. The plaintiff filed a motion to make the TRO a permanent restraining order for the pendency of the proceedings, and the defendants subsequently filed a motion to dismiss and to quash the TRO. In a memorandum in support of their motion, the defendants presented for the first time the argument which is at the center of this appeal: that Packer's Supply House was an entirely different legal entity from Packer's Supply Co. and that since they had signed a non-compete agreement with Packer's Supply House rather than Packer's Supply Co., there was no basis for the lawsuit.

The trial court conducted a hearing on the competing motions on February 28, 2006. In addition to their primary argument set out above, the defendants argued in the alternative that the restrictions in the non-compete agreement they had signed were unreasonable as to territorial extent and duration and, therefore unenforceable under Tennessee law. At the conclusion of the hearing, the court granted the defendants' motion and dissolved the TRO, having determined that injunctive relief was not appropriate in this case. The plaintiff challenged this ruling through procedural mechanisms which included two Rule 10 applications for extraordinary appeal to this court, but was ultimately unsuccessful.[1]

The dispositive order in this case resulted from competing motions for summary judgment. Scott Lau argued that he had assigned all the assets and liabilities of his sole proprietorship, Packer's Supply House, to Packer's Supply Co. by operation of law, including the non-compete agreement at issue. He asserted that consideration for that assignment was his acquisition of 100% of the stock in the new corporation.

Eric Weber and Robert Rini pointed out that the non-compete agreement did not contain any

---

[1]The Court of Appeals granted the plaintiff's first application for extraordinary appeal, ruling that the trial court's order declining to impose a temporary injunction on the defendants' activities was flawed because it lacked findings of fact and conclusions of law, as required by 65.04(6) Tenn. R. Civ. P. On remand, the trial court filed a new order to the same effect as the first, but including the required findings of fact and conclusions of law. The plaintiff then filed a new Rule 10 application for extraordinary appeal, which this court denied.

language specifically indicating that it was assignable and that no proof was presented that the agreement had actually been assigned to the corporation, other than Mr. Lau's bald assertion that such an assignment had occurred. They therefore argued that there was no contract between them and Packer's Supply Co. and that the corporation had no standing to enforce an agreement entered into by a business entity which no longer existed.

Both parties filed Statements of Undisputed Facts and Responses pursuant to Tenn. R. Civ. P. 56.03. They showed very little disagreement as to what had transpired between them, aside from their different accounts of the statements that Mr. Lau made when he asked the defendants to sign a new non-compete agreement.

The final hearing on the competing motions for summary judgment was conducted on November 16, 2006.[2] The court heard vigorous arguments by the attorneys on both sides. At the conclusion of proof, the court ruled in favor of the defendants. The court reasoned that since there was no documentation to establish that Packer's Supply House had ever assigned the non-compete agreements to Packer's Supply Co., the corporation lacked standing to enforce those agreements. The court's ruling was memorialized in orders filed on November 28, 2006 and January 22, 2007.[3] The court further declared that there was no just reason for delay, and directed that its order be declared final for purposes of appeal under Tenn. R. Civ. P. 54.02.[4]

### III. ANALYSIS

#### A. THE STANDARD OF REVIEW

The standards for awarding summary judgment are well known. Summary judgment may only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In determining whether there is a genuine issue of material fact, the trial court must view the pleadings and the evidence before it in the light most favorable to the opponent of the motion and allow all reasonable inferences in its favor. *Byrd v. Hall*, 847 S.W.2d at 215; *Taylor v. Banner Publishing Co.*, 573 S.W.2d 476 (Tenn. Ct. App. 1978)

---

[2]An earlier hearing on the motions for summary judgment was conducted on April 21, 2006. At the conclusion of that hearing, the trial court dismissed both motions, and asked the attorneys to agree on a date to try the case.

[3]The second of the two orders was filed in response to the plaintiff's motion for the court to state the legal grounds upon which it granted the defendants' motion for summary judgment.

[4]The court's summary judgment order did not resolve all the claims between the parties because the defendants had filed a counter-claim against Packer's Supply Co. for 80 hours of vacation pay that were allegedly accrued but not paid for. Thus, a Rule 54.02 declaration that the court's judgment was final for purposes of appeal was necessary in order for this court to obtain jurisdiction over the appeal. The issue of vacation pay is not before this court at this time.

4

On appeal, we review the summary judgment decision as a question of law. We accord no presumption of correctness to the trial court's decision, but review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997).

The trial court's ruling in this case does not involve any questions of material fact, but only a question of contract law. The undisputed operative facts are the existence of the two non-compete agreements, the transformation of a sole proprietorship into a corporation, the absence of any specific reference to assignment in the non-compete agreements, and the lack of documentation as to the assignment of the non-compete agreements to the corporation. The question of law is whether under those circumstances the non-compete agreements were validly assigned to the corporation, thereby endowing the corporation with the right to sue for their breach.

## B. NON-COMPETE AGREEMENTS IN GENERAL

The courts of this state have had numerous opportunities to consider the validity of non-compete agreements. *See Dabora v. Kline*, 884 S.W.2d 475, 477 (Tenn. Ct. App. 1994). They have frequently observed that such agreements are not favored by law, because they are deemed to be in restraint of trade. *Hasty v. Rent-A-Driver*, 671 S.W.2d 471, 472 (Tenn. 1984); *AllRight Auto Parks Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966). They may also place an inequitable burden upon a worker's ability to earn a living, so such covenants are construed strictly in favor of the employee. *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

Nonetheless, covenants not to compete are not invalid *per se*. They may be enforced if they are found to be reasonable under the circumstances. *Hasty v. Rent-A-Driver*, 671 S.W.2d at 472. *See also AllRight Auto Parks*, 409 S.W.2d at 365; *Matthews v. Barnes*, 293 S.W. 993 (Tenn. 1927); *Ramsey v. Mutual Supply*, 427 S.W.2d 849 (Tenn. Ct. App. 1968). Our courts have held that such covenants are enforceable if an employee would otherwise be able to exercise an unfair advantage in future competition with his employer, and if they are no broader in duration or as to the territory they embrace "than is reasonably necessary to secure the protection of the business or good will of the employer." *Matthews v. Barnes*, 293 S.W. at 994.

We are not required in this appeal to reach the question of whether the non-compete agreement at issue reaches the proper balance between the right of the plaintiff to be free from unfair competition and the right of the defendants to earn a living, and we do not need to decide whether the agreement is reasonable in scope. We simply must determine whether it is enforceable by Packer's Supply Co. against the defendants, so that its reasonableness and enforceability may be further litigated before the trial court.

## C. ASSIGNMENT OF NON-COMPETE AGREEMENTS

Contract rights are generally assignable unless such assignment changes the obligor's position to his detriment or increases the burden or risk imposed on him by the contract. *Williamson County Broadcasting Co. v. Intermedia Partners*, 987 S.W.2d 550, 553 (Tenn. Ct. App. 1998); *Petry v. Cosmopolitan Spa International, Inc.*, 641 S.W.3d 202, 203 (Tenn. Ct. App. 1982). Some exceptions to the general rule are contracts for personal services and contracts containing explicit terms prohibiting assignment. However, the parties agree that the non-compete agreement at issue is not a personal services contract because it does not require any party to perform personal services, but only to abstain from particular conduct. *See Managed Health Care Associates v. Kethan,* 209 F.3d 923, 929 (6th Circuit 2000) (applying Kentucky law and finding that a non-compete agreement by its nature is not a personal services contract).[5] There is also no language in the non-compete agreement which prohibits its assignment.

As early as 1906, the Tennessee Supreme Court ruled that a covenant not to compete was assignable to the same degree, and subject to the same limitations, as other contracts. In *Bradford & Carson v. Montgomery Furniture Co.*, 92 S.W. 1104, 1106 (Tenn. 1906), Bradford and Carson, partners who owned a Nashville furniture store, executed a three-year non-compete agreement in conjunction with the sale of their store to another company. Five months after execution of that contract, the buyer sold its entire business to a corporation it had been instrumental in creating. Another six months later, Bradford opened a wholesale furniture business in Nashville, in direct competition with the corporation. In response to Bradford's argument that the sale to the corporation had vitiated the non-compete agreement, the court declared,

> We think the complainants[6] contracted with the defendants not to engage in the furniture business for three years, in competition with them, regardless of whether they conducted their business as individuals, partners, or stockholders in a corporation. The thing contracted for was protection against competition from the complainants. . . . It was immaterial to the complainants in what name the defendants conducted their business; that was a matter in which they were not interested. Their contract was simply not to engage in a business which would by competition be injurious to, or compete with the capital, energy, and ability which the defendants were investing in and devoting to the furniture business in Nashville.

---

[5]Some jurisdictions have taken the view that non-compete agreements are personal service contracts, and thus that they are assignable only if the agreements themselves specify that they are. *Traffic Control Services Inc. v. United Rentals Northwest, Inc.,* 87 P.3d 1054 (Nev. 2004); *Reynolds and Reynolds Co. v. Hardee*, 932 F.Supp. (E.D.Va. Jul 11, 1996). Both of the above cases involve the sale of a business to an unrelated party. It is unclear whether their ultimate holdings would remain the same if they involved sole proprietorships which became incorporated, with no substantive changes in the operations of the business.

[6]Bradford and Carson were designated as the complainants because they sued on a note, and their failure to comply with the terms of the non-compete agreement was raised as a defense to payment.

Our Supreme Court distinguished the *Bradford & Carson* case in the later case of *Jackson v. Moskovitz Agency, Inc.*, 672 S.W.2d 400 (Tenn. 1984). The Court reiterated the general principle that a covenant not to compete is a property right which is assignable and transferable in the absence of a provision to the contrary. The Court observed that the non-compete agreement in *Bradford* was silent as to assignability, but that in the case before it, the non-compete agreement contained a clause specifically stating that the agreement was personal to each of the parties and that ". . . neither party may assign or delegate any of the rights or obligations hereunder without first obtaining the written consent of the other party." *Jackson v. Moskovitz Agency, Inc.*, 672 S.W.2d at 401. Since Jackson had not consented to the assignment of the agreement, the court held that it could not be enforced against him.

In the case before us, the plaintiff notes that there is no language in the agreement before us that limits its assignability and argues that under the authority of *Bradford* and *Jackson* we must therefore find it enforceable. Defendants concede that if there was any documentation to indicate that Mr. Lau had assigned his rights under the agreement to Packer's Supply Co., such an assignment would be valid and Packer's Supply Co. would have the right to enforce the agreement.[7] They argue, however, that since there is no evidence of assignment other than Mr. Lau's self-serving declaration that he had transferred all of the assets of his sole proprietorship, including the non-compete agreement, to the corporation, no such assignment has occurred.

Mr. Lau declared that he had transferred all of the assets of his sole proprietorship to Packers Supply Co. in exchange for 100% of the stock of the new corporation. We note that the defendants do not contend that any of those assets were not validly transferred other than the non-compete agreement. They do not present any argument as to why the non-compete agreement should be treated differently from any other assets. We cannot identify any reason why Mr. Lau, or any other sole proprietor, would transfer all assets to his solely-owned corporation except non-compete agreements that would remain important to the viability of the new entity. Mr. Lau's testimony was uncontradicted, and the record reflects no basis to disbelieve it.[8]

There are apparently no Tennessee cases that deal specifically with the type or degree of proof which is necessary to prove that a non-compete agreement has been assigned when a sole proprietorship is reorganized as a corporation, and the defendants have not cited any cases from other jurisdictions which deal with this question. One probable reason for the lack of authority on this specific question is that most cases which have considered the assignability of non-compete agreements have focused on issues other than the mechanism whereby the assignment was

---

[7]One possible way to document such an assignment would be through the minutes of the corporation's organizational meeting. *See* Tenn. Code Ann. § 48-12-105(a). However, in this case it appears that no such meeting was ever held.

[8]It is unlikely that a company that bought products from Packers Supply House would be able to avoid paying for those products based on an argument that its contract with Packers Supply House could not be enforced by Packers Supply Co. because there was no independent proof that the sole owner of both businesses did not transfer or assign the receivable or the contract to the succeeding entity.

accomplished. However, the plaintiff has cited several cases to serve as persuasive authority for the proposition that a valid assignment was made in the case before us.

In *Louisiana Office Systems, Inc. v. Boudreaux*, 298 S.W.2d 341 (La. App. 1974), as in the present case, an employee of a business operating as a sole proprietorship signed a non-compete agreement with the business. The business was later incorporated. The employee subsequently went to work for another company, and the corporation attempted to enforce the non-compete agreement. The owner testified that when he incorporated his business he transferred to the corporation all his business-related rights and assets. Relying on Louisiana statute, the court ruled that such testimony was sufficient proof of the assignment of the non-compete agreement to the corporation, "in the absence of any proof to the contrary." *Louisiana Office Systems*, 298 S.W.2d at 343. [9]

*Equifax Services v. Hitz,* 905 F.2d 1355 (10th Circuit 1990), involved a merger of two companies and a question as to the right of the surviving corporation to enforce a non-compete agreement that one of its predecessor companies had obtained. The federal court applied Kansas law to rule that in such circumstances, "the surviving corporation *automatically* succeeds to the rights of the merged corporations to enforce employees' covenants not to compete." *Equifax Services v. Hitz,* 905 F.2d at 1361 (*emphasis added*).

In *Rogers v. Runfola & Associates,* 565 N.E.2d 540 (Ohio 1991), two employees of a court reporting firm signed a covenant not to compete with their employer, a sole proprietorship that later became chartered as a corporation. The court's opinion recites that the covenant was assigned to the corporation, but does not reveal exactly how this was accomplished. However, employing reasoning similar to that found *Bradford & Carson v. Montgomery Furniture Co.*, the court concluded that the assignment was valid because "[o]nly the legal structure of the business changed, not the business itself." *Rogers v. Runfola & Associates,* 565 N.E.2d at 543.

We believe the reasoning of all the above-cited cases is consistent with that of *Bradford & Carson v. Montgomery Furniture Co.*, which remains good law in Tennessee. A common thread running through all those cases (including *Bradford*) is that the purpose for which the parties entered into the non-compete agreement - to protect an existing business from unfair competition from its former employees - was more important than any changes in the legal identity of that business. As the Tennessee Supreme Court stated in *Bradford*, the employees agreed not to compete with their employer, and they have no interest in the form of business the employer chose to use.[10]

---

[9]The Louisiana Supreme Court partially reversed *Louisiana Office Systems, Inc. v. Boudreaux* on other grounds. *Orkin Exterminating Co. v. Foti*, 302 So.2d 593, 596 (La. 1974). The reversal did not involve the validity of the assignment of the non-compete agreement.

[10]We also believe the same reasoning should apply to the changes in the employment status of the defendants in this case. For purposes of the enforcement of the non-compete clause, it should not matter if they are considered independent contractors or employees, because the potential for unfair competition remains the same in either case. Allowing the defendants to avoid compliance with the non-compete agreement simply because of a restructuring of the business and of their employment status "would exalt form over substance." *See Managed Health Care Associates v.*

We hold that the agreements not to compete that are at issue in the case were enforceable by Packers Supply Co. under the clear precedent of *Bradford*. We also hold that the non-compete agreements were assigned from the sole proprietorship to the corporation along with all the other assets of the business. Accordingly, on the basis of two independent, but interrelated and complementary principles, the defendants were not entitled to a judgment that the non-compete agreements were unenforceable against them on the basis that their employer changed its form of doing business.

## IV.

We reverse the judgment of the trial court. Remand this case to the Circuit Court of Rutherford County for further proceedings. Tax the costs on appeal to the appellees, Eric H. Weber and Robert S. Rini.

_____
PATRICIA J. COTTRELL, JUDGE

---

*Kethan,* 209 F.3d 923 at 929.